UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALECIA C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

Case No. 25-10463

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT (ECF Nos. 9, 11)**

## I.     INTRODUCTION

Plaintiff Alecia C. filed a Title II application for a period of disability and disability insurance benefits on October 5, 2021, alleging disability beginning on September 4, 2020. (ECF No. 6-1, PageID.200–04). The application was denied at the initial administrative level on August 4, 2022, and upon reconsideration on November 28, 2022. (*Id.* at PageID.112–15, 118–21). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on February 1, 2023, which took place on November 30, 2023. (*Id.* at PageID.53, 122–23). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on December 17, 2024. (*Id.* at PageID.17–19, 30–32). The ALJ's decision consequently became the final decision of the

Commissioner of Social Security ("Commissioner").  *See Kearney v. Colvin*, 14 F.

Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 F.

App'x 570 (6th Cir. 2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830,

832 (6th Cir. 2006).  The case is now before the court for review of that decision

under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have

consented to the conduct of all proceedings and entry of a final judgment by the

undersigned United States Magistrate Judge.  (ECF No. 7).

After careful scrutiny of the record and the parties' briefs, and for the

reasons below, Plaintiff's *Motion for Summary Judgment* (ECF No. 9) is

**DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 11) is

**GRANTED**, and the administrative decision is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  When

reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made

pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582

F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant

3

on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d

at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.    STATUTORY AND REGULATORY FRAMEWORK

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520.[1]  The Plaintiff has the

burden of proof at steps one through four, but the burden shifts to the

Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

## IV.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 42 years old on the alleged disability onset date.  (ECF No. 6-1, PageID.45, 93).  She lives in Detroit, Michigan, with her partner who also serves as her home healthcare worker.  (*Id.* at PageID.49, 58–59).  She has at least a high school education.  (*Id.* at PageID.45).  In the past, Plaintiff worked as a warehouse worker and various roles through temporary agencies.  (ECF No. 9, PageID.935).  Plaintiff's primary complaints include chronic pain, a lumbar condition, a left ankle condition, and left upper extremity conditions.  (ECF No. 6-1, PageID.41).

Following an administrative hearing, and employing the five-step process, the ALJ found at **Step One** that Plaintiff "has not engaged in substantial gainful activity since September 4, 2020, the alleged onset date[.]"  (*Id.* at PageID.35).  At **Step Two**, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. §§ 404.1520(c): degenerative disc disease; left ankle impingement syndrome; chronic obstructive pulmonary disease ("COPD"); asthma; right carpal tunnel syndrome; tarsal tunnel syndrome; myofascial, neuropathic, and sacroiliac joint pain; left shoulder bursitis; left rotator cuff arthropathy/tendinosis; and obesity.  (*Id.* at PageID.35).  But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination

of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations.  (*Id.* at PageID.42).  Next, the ALJ articulated Plaintiff's Residual Functional Capacity ("RFC") as follows:

> [T]the claimant has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except can frequently handle and finger with the bilateral upper extremities; can occasionally climb ramps and stairs; can occasionally use foot controls with the left lower extremity; can occasionally stoop, kneel, crouch, and crawl; can occasionally reach overhead with the left upper extremity; cannot climb ladders, ropes, or scaffolds; cannot be exposed to unprotected heights, dangerous moving machinery, uneven terrain, or vibration.

(*Id.* at PageID.40–41).

At **Step Four**, having consulted a vocational expert ("VE"), the ALJ concluded that Plaintiff has past work as a warehouse worker (unskilled/medium, heavy as performed), assembler (unskilled/medium, light as performed), sorter (unskilled/light), masker (semi-skilled/ light), data entry clerk (semi-skilled/sedentary), medical biller (semi-skilled/sedentary), and driver (semi-skilled/medium), and that she "is able to perform past relevant work as a data entry clerk, medical biller, and sorter."  (*Id.* at PageID.45).  Even though the ALJ found that Plaintiff could perform past relevant work, the ALJ next made "alternative findings" for **Step Five** and concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at PageID.45–46).  Based upon the testimony of the VE, the ALJ identified the following as representative occupations: a "marker" (unskilled, light work), a

"garment sorter" (unskilled, light work), and a "router" (unskilled, light work).
(*Id.* at PageID.46).  Accordingly, the ALJ concluded that Plaintiff "has not been
under a disability [. . .] since September 4, 2020, through the date of this
decision[.]"  (*Id.* at PageID.46).  Based on these findings, the ALJ denied
Plaintiff's claim.  (*Id.* at PageID.30–32).

## V.      DISCUSSION

Plaintiff presents two issues for the Court to consider in its review of the
Commissioner's decision: (1) Whether the ALJ erred by rejecting her need for a
rollator walker; and (2) whether the ALJ erred by failing to consider the vocational
impact of her non-severe hidradenitis suppurativa ("HS") on her RFC.  (ECF No.
9, PageID.932).

### A.      Medical Necessity of Plaintiff's Rollator Walker

Plaintiff's first issue focuses on her use of a rollator walker and the ALJ's
rejection of the medical necessity of its use.  (*Id.* at PageID.944).  First, she argues
that the ALJ erred in finding that the record does not contain "evidence of
treatment" by the physician who prescribed Plaintiff's walker, Amber Roman,
MSN.  (*Id.*)  Next, Plaintiff avers that the ALJ failed to reconcile conflicting
objective evidence of an abnormal gait in finding that "consistent examinations
show[ed] normal strength and normal gait."  (*Id.* at PageID.945–46).

An ALJ's conclusion that a walker or other assistive device is not medically necessary can be error when: "(i) the claimant has been prescribed an assistive device; (ii) the ALJ did not include the use of the device in the RFC assessment; and (iii) did not provide an explanation for the omission." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-CV-2380, 2020 WL 9460505, at *13 (N.D. Ohio July 7, 2020), *report and recommendation adopted*, 2021 WL 1540389 (N.D. Ohio Apr. 19, 2021). The ALJ did not include the use of a walker in the RFC here, but she explained the omission. As explained below, that omission is supported by substantial evidence.

There is not much evidence related to Plaintiff's use of a walker in the record. Plaintiff draws the Court's attention to a December 2019 physical therapy note that stated Plaintiff's therapy goals are to improve gait, ambulation capacity, and "increase ambulation time to 15 minutes with a cane or walker." (ECF No. 9, PageID.937) (citing ECF No. 6-1, PageID.449). Plaintiff also points to the January 9, 2023, prescription issued by Angela Roman of Romancare Health Services. (*Id.* at PageID.941) (citing ECF No. 6-1, PageID.925). As will be discussed in more detail below, the ALJ referenced other medical appointments that mentioned a walker, not cited in Plaintiff's motion.

During the November 30, 2023, hearing before the ALJ, Plaintiff testified that she uses a walker because if she walks too long of a distance her back begins

8

to "tighten." (ECF No. 6-1, PageID.73). She stated she had been using it for about a year and it was prescribed by Angela Roman. (*Id.* at PageID.73–74). The ALJ asked Plaintiff's counsel to point to where in the record it indicates that Plaintiff was using a walker and to locate the prescription in the record. (*Id.* at PageID.79–80). The ALJ noted that the first reference cited by Plaintiff's counsel was simply Plaintiff telling a nurse practitioner that she has a walker; the next reference was from 2019, prior to the alleged onset date; and the final reference was a note regarding education on the proper use of a cane or walker during recovery from a hernia surgery. (*Id.* at PageID.79–82). The ALJ then presented hypotheticals to the VE and upon adding a walker to the hypothetical, the VE found that use of a walker would eliminate all "light jobs," however, the sedentary jobs would remain, such as data entry and medical biller. (*Id.* at PageID.86–87). Plaintiff's counsel posed a hypothetical that included the use of a walker at all times when standing and the VE responded that it would eliminate the light and sedentary jobs. (*Id.* at PageID.89–90).

Upon review of the evidence, the ALJ found that a January 9, 2023, prescription for a rollator walker was included in the record, but the "record contains no other evidence of treatment by the prescriber, Angela Roman, MSN, FNP-BC, or from the healthcare entity she was associated with, Romancare Health Services." (*Id.* at PageID.42). The ALJ further found that "the available evidence

does not document the use of an assistive device during the period at issue."  The

ALJ summarized the medical evidence with regard to the medical necessity of a

walker and her findings as to each as follows:

> The claimant's representative pointed to a physical therapy note from December 4, 2019, which includes improved cane/walker ambulation as one of the claimant's goals (3F/63).  This does not support a contention that the claimant required an assistive device during the period at issue given that the note is from nine months prior to the claimant's alleged onset of disability of September 4, 2020.  The claimant's representative also referenced a note from October 14, 2022, indicating that the claimant was educated on and demonstrated proper use of crutches, walker, or other ambulatory aide (14F/65).  This is also not supportive of the claimant's allegations regarding the use of an assistive device.  First, the note is from almost three months prior to the January 9, 2023, prescription for a rollator walker.  Second, the note is clearly one of many general patient education topics from after the claimant's October 14, 2022 hernia repair surgery and does not definitively or specifically indicate that the claimant was actually provided with or using any kind of assistive device for ambulation.  Even if she was, the evidence does not show that it was on more than a temporary basis after her surgical procedure.  There is a note from a January 18, 2023 physical therapy visit where the claimant said that she had obtained a four-wheeled walker to use while grocery shopping (16F/25).  Similarly, on January 24, 2023, the claimant said that she was using a walker for prolonged standing at home and when grocery shopping (16F/16).  Neither of those notes indicate that the claimant was observed using a walker.  At subsequent healthcare visits, the claimant was not noted to be using a walker or other assistive device and her gait was usually described as normal and without a myelopathic gait pattern.

(*Id.* at PageID.42–43).  As a result, the ALJ found that the "available evidence

does not support the need for an assistive device."  (*Id.* at PageID.43).

10

Plaintiff's focus on the ALJ's statement that there is "no other evidence of treatment by the prescriber" is misplaced.  The ALJ did not reject the medical necessity of the walker based on whether Angela Roman is a treating physician, but instead provided a thorough review and findings related to each piece of medical evidence in the record that referenced the use of an assistive device, and concluded that the "available evidence does not support the need for an assistive device."  Plaintiff does not dispute that Roman's treatment records are not part of the record, thus, the ALJ's decision was factually based upon the available evidence of record.

SSR 96-9p states, "'To find that a hand-held assistive device is medically required, there must be medical documentation [1] establishing the need for a hand-held assistive device to aid in walking or standing, and [2] describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'"  *Palmer v. Comm'r of Soc. Sec.*, No. 19-CV-11020, 2020 WL 5209358, at *4 (E.D. Mich. Sept. 1, 2020) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).  The mere prescription of an assistive device does not establish it is medically required under 96-9p.  *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding that ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the

11

prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane."); *Schwartz v. Comm'r of Soc. Sec. Admin.*, No. 4:18-CV-12190, 2019 WL 3943863, at *6 (E.D. Mich. Aug. 1, 2019), *report and recommendation adopted*, 2019 WL 3936666 (E.D. Mich. Aug. 20, 2019); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (holding that nothing in a "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work.").

It is undisputed that the record contains a January 9, 2023, prescription for a rollator walker by Angela Roman, MSN, FNP-BC.  (ECF No. 6-1, PageID.925). The ALJ also found the available medical records do not reflect that a walker is medically necessary, nor are there records by Angela Roman or any other physician describing the circumstances for which it is needed such as how often it should be used, its purpose, or its limit upon Plaintiff's ability to perform work.

Plaintiff avers that evidence of an abnormal gait supports the need for the walker and the ALJ's finding that "her gait was usually described as normal and without a myelopathic gait pattern," was made in error because the record reflects multiple instances of gait abnormalities.  (ECF No. 9, PageID.948–49).  But, this argument is also misplaced as Plaintiff took this statement out of context.  The full sentence reads: "*At subsequent healthcare visits*, the claimant was not noted to be

using a walker or other assistive device and her gait was usually described as normal and without a myelopathic gait pattern." (ECF No. 6-1, PageID.43) (emphasis added). The preceding sentences discuss the October 4, 2022, hernia repair surgery post-operative notes; the January 9, 2023, rollator walker prescription; the January 18, 2023, physical therapy note; and the January 24, 2023, medical record in which Plaintiff indicated that she was using a walker for "prolonged standing at home and when grocery shopping." (*Id.* at PageID.43, 762). Plaintiff cites medical records reflecting an abnormal gait from October 19, 2019, November 8, 2019, December 4, 2019, June 7, 2021, and March 7, 2022, none of which are "*subsequent* healthcare visits" to those discussed by the ALJ. (ECF No. 9, PageID.945). Indeed, the medical evidence subsequent to those listed by the ALJ include: November 16, 2022, and February 1, 2023, visits where Dr. Santa Barbara noted that Plaintiff's gait was normal, and there was no evidence of a myelopathic gait pattern, and a March 1, 2023, telemedicine neurological examination in which Dr. Hamilton noted a normal gait and that she "saw patient walking in the video normally without any difficulty." (ECF No. 6-1, PageID.759, 801, 882). The Plaintiff does not point to, and the Court could not find, any medical evidence inconsistent with the ALJ's statement that all medical visits after those addressed in her opinion reflected a normal gait.

Plaintiff asserts that remand is necessary because the ALJ ignored evidence by failing to explicitly address the three instances of objective examinations finding gait dysfunction during the relevant period, or those prior to the alleged onset date, making it difficult to know if the ALJ reviewed the evidence suggesting gait dysfunction. (ECF No. 9, PageID.945–50 (citing ECF No. 6-1, PageID.413, 603, 614)). The ALJ articulated specifically her reasoning for discounting Plaintiff's allegations that her walker was medically necessary and for finding the available record does not reflect that the walker was medically necessary. *Perdue v. Colvin*, No. 15-14006, 2017 WL 362668, at \*6 (E.D. Mich. Jan. 9, 2017) *report and recommendation adopted*, 2017 WL 976790 (E.D. Mich. Mar. 14, 2017) (finding that the claimant was properly limited to light work "given the lack of documentation that a cane was medically necessary. . . ."). While the ALJ did not specifically discuss the treatment records that reflected gait abnormalities, the ALJ indicated that she reviewed the entire record, specifically addressed the treatment records, and found that the medical necessity of the walker was not supported by the record. In the ALJ's opinion, she found that the Plaintiff's gait was "*usually* described as normal" and that "*consistent* examinations show[ed] normal strength and normal gait." (ECF No. 6-1, PageID.43–44) (emphasis added). The ALJ's use of terms like "usually" and "consistently" makes it clear that she did not find that *all* treatment records show normal gait in her decision.

14

But, of course, the ALJ need not discuss every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in [her] written decision every piece of evidence submitted by a party.") (internal quotations omitted).

Here, while the record does reflect that Plaintiff was prescribed a rollator walker, as previously noted, the mere prescription of an assistive device does not establish that it is medically required under 96-9p.  *Salem*, 2015 WL 12732456, at *4; *Marko*, 2017 WL 3116246, at *5.  The undersigned finds the record before the ALJ, which the ALJ referenced, did not support the medical necessity of a walker during the relevant period and the ALJ was not, therefore, required to discuss the walker in formulating the RFC.  Here, substantial evidence supports the ALJ's conclusion and Plaintiff has not demonstrated that she is more limited than her RFC.

In summation, while the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *TNS, Inc.*, 296 F.3d at 395 (quoting *Universal Camera Corp.*, 340 U.S. at 487); *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at

273). Ultimately, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Here, while there is some evidence in support of Plaintiff's position that she was prescribed a rollator walker toward the end of the relevant period on appeal, as well as her own statement that she began using a walker for prolonged standing or when grocery shopping, there is substantial evidence in support of the ALJ's RFC conclusion which omits a limitation for walker use. Accordingly, the ALJ's decision in this regard should be affirmed.

### B. Consideration of Plaintiff's Hidradenitis Suppurativa

Plaintiff argues that the ALJ erred by failing to sufficiently consider the vocational impact of her non-severe HS on her RFC. (ECF No. 9, PageID.950). To start, Plaintiff does not challenge the ALJ's findings that her HS condition is a non-severe impairment but instead challenges whether its limitations should have been accounted for in the ALJ's RFC findings. Plaintiff notes that consideration on non-severe impairments is governed by SSR 96-8p, which states, in relevant part:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic

16

work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

(*Id.* at PageID.950–51) (quoting SSR 96-8p).  Plaintiff asserts that the Sixth Circuit found that an ALJ properly complies with SSR 96-8p where the ALJ "stated that she had carefully considered the entire record and 'all symptoms'" in the RFC assessment and explicitly acknowledgment that she was "required to comply with SSR 96-8p's mandate to 'consider all of the claimant's impairments, including impairments that are not severe" in the RFC assessment.  (*Id.* at PageID.951) (quoting *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020)).

Plaintiff also asserts that in applying *Emard*, district courts have used three markers: 1) An express reference to SSR 96-8p; 2) A discussion of the functional limitations imposed by the plaintiff's non-severe impairments at Step Two; and 3) A subsequent assurance that the ALJ had considered the entire record and all symptoms in the RFC assessment.  (*Id.* at PageID.951–52) (citing *Stevens v. Comm'r of Soc. Sec.*, No. 1:24-CV-220, 2024 WL 4529360, at *4 (W.D. Mich. Sept. 27, 2024), *report and recommendation adopted*, 2024 WL 4528023 (W.D. Mich. Oct. 18, 2024)) (citations omitted).  Plaintiff concedes that the ALJ's opinion contained an express reference to SSR 96-8p and provided an assurance

17

that she considered the entire record and all symptoms in the RFC, but asserts that the ALJ did not "sufficiently identify the functional limitations imposed by [Plaintiff's] HS at Step 2," and that a finding that Plaintiff "had no functional limitations from her condition is not supported by substantial evidence." (*Id.* at PageID.952–53).

During the November 30, 2023, hearing the ALJ noted concern in physical therapy treatment records about a wound under Plaintiff's left arm and asked her the status of that condition. (ECF No. 6-1, PageID.67). Plaintiff responded "[i]t's okay now, but the reason I didn't go to therapy at this particular time" was due to fibroids of her uterus that caused prolonged bleeding. (*Id.*). Plaintiff testified that they are "big bumps that swell up under [her] arms," and they made it painful to the extent that she had difficulty sleeping and she could barely move her arms. (*Id.* at PageID.76). Plaintiff stated that she would either have to go to the hospital to have it drained or use warm compresses at home to drain it. (*Id.*). The ALJ noted that the record reflects that the condition is one in which people generally treat it at home unless it gets severe, and sought clarification as to where the bumps developed as the record only showed treatment under her left arm. (*Id.* at PageID.80). Plaintiff testified that she had primarily gotten them under her left arm, but more recently they also began to develop under her right arm. (*Id.* at PageID.76, 81–82). She also testified that they flare up about every two months,

18

and it takes around two weeks to clear up and relieve her pain.  (*Id.* at PageID.76–77).  Plaintiff's counsel posed a hypothetical to the VE that limited an individual to an inability to use her upper extremities for one-week out of any given month, and the VE stated that if it were on an ongoing basis, this condition would be work preclusive.  (*Id.* at PageID.90).

Upon finding that Plaintiff's medically determinable impairment of HS was not severe at Step Two, the ALJ was required to consider it along with her severe impairments in conducting the RFC analysis.  When formulating an RFC, an ALJ must "'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'"  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 726 (6th Cir. 2014) (quoting 20 C.F.R. § 404.1523); *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all [her] limitations, not just those that are 'severe.'").

This standard recognizes that "the definition of a non-severe impairment contemplates that non-severe impairments may very well impose *some* type of limitation on basic work activities" and that "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose *any* work-related restrictions."  *Patterson v.*

*Colvin*, No. 5:14 CV 1470, 2015 WL 5560121, at \*4 (N.D. Ohio Sept. 21, 2015) (quoting *Katona v. Comm'r of Soc. Sec.*, No. 14-cv-10417, 2015 WL 871617, at \*6 (E.D. Mich. Feb. 27, 2015) (citing 20 C.F.R. 404.1521(a)).

An ALJ's disability determination is not supported by substantial evidence where all impairments, both severe and non-severe, are not considered in the RFC analysis.  "Courts within the Sixth Circuit have repeatedly held that 'an ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error.'"  *Patterson*, 2015 WL 5560121, at \*4 (quoting *Katona*, 2015 WL 871617, at \*7).  Even if an ALJ finds it unnecessary to impose any further restrictions due to a claimant's non-severe impairments, the ALJ is required to articulate at this step in the analysis why these impairments do not require a more limited RFC.  *Id.* (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at \*3 (E.D. Mich. July 18, 2013) (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009)) ("Where an ALJ determines that non-severe impairments do not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusions.'").

At Step Two, the ALJ acknowledged that Plaintiff had a determinable impairment of HS but found that it was non-severe "because they no more than minimally limit the claimant's ability to perform basic work activities."  (ECF No. 6-1, PageID.35).  The ALJ noted that Plaintiff reported pain that limits the use of

20

her arms and interferes with sleep due to her HS condition.  (*Id.* at PageID.36).

Upon review of the relevant medical evidence, the ALJ found:

> The claimant reported having four to five large boils in her left armpit over the course of a little more than a year at an April 4, 2022 dermatology visit (6F/9).  She said that the boils enlarge, become tender, and eventually resolve by bursting and then healing.  Examination noted a resolving papulonodule on the left axilla.  The claimant was diagnosed with hidradenitis suppurativa and advised on treatment for that condition.  When the claimant followed up on February 27, 2023, she admitted that she had stopped using her prescribed wash and topical treatment after a few months (17F/60).  She estimated having flares every one to two months, with each lasting about one week.  She rated the impact of her condition on her quality of life at 4 out of 10.  Examination found a few mildly tender subcutaneous nodules in the left axilla (17F/61).  The claimant was advised to restart the regimen she had been placed on back in April 2022.  At a November 6, 2023 dermatology visit, the claimant said that her medication was effective when she had flares, but if she does not have her medication, her boils swell and become painful (18F/1).  Examination found a few mildly tender subcutaneous nodules in the left axilla (18F/2).  The claimant's treatment regimen was adjusted.

(*Id.* at PageID.36–37).  The ALJ acknowledged that in making her findings, she "must consider all of the claimant's impairments, including impairments that are not severe."  (*Id.* at PageID.34) (citing 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p).  Also, at the end of her Step Two analysis, the ALJ stated that "[a]lthough they are not severe impairments, I still considered the above conditions in combination with the claimant's severe impairments in determining the claimant's [RFC] consistent with 20 CFR 404.1545."  (*Id.* at PageID.39).

It is clear that the ALJ considered the objective and subjective evidence concerning Plaintiff's HS, including her reports of flare ups every few months, that the pain restricts movement in her arms, that she rated it as a four out of ten impact on her life, that medication was effective at controlling the symptoms, and that treatment records reflect mild symptoms, but she did not include Plaintiff's subjective functional limitation in the RFC. Accordingly, Plaintiff's reliance on SSR 96-8p and her argument that the ALJ was required to explain why Plaintiff's non-severe HS resulted in no limitations are unavailing. *See Jody S. v. Comm'r of Soc. Sec.*, No. 1:24-CV-11915, 2025 WL 2099968, at *14 (E.D. Mich. July 25, 2025) (finding the plaintiff's reliance on SSR 96-8p was misplaced because the agency only requires that the ALJ "consider" limitations and restrictions); *Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-cv-12011, 2022 WL 413371, at *6 (E.D. Mich. Jan. 18, 2022) ("First, while the regulations require the ALJ to 'consider' the possible effect of a non-severe impairment on the claimant's capacity to work, there is no accompanying requirement that the RFC must include restrictions reflecting a non-severe condition in the RFC."), *adopted sub nom. Plotkowski v. Saul*, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022). ALJs are "not required to specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered." *Smith v. Comm'r of Soc.*

22

*Sec.*, No. CV 24-125, 2026 WL 732770, at *2 (E.D. Ky. Mar. 15, 2026) (citations omitted).

The ALJ explicitly referenced SSR 96-8p, explicitly considered Plaintiff's HS condition noting that the objective treatment records reflected mild symptoms and found that it "no more than minimally limit[ed] the claimant's ability to perform basic work activities," and explicitly stated the non-severe impairments were considered in combination with her other severe conditions in determining the Plaintiff's RFC.  SSR 96-8p; *see Stephen T.C. v. Comm'r of Soc. Sec.*, No. 1:23-cv-10821, 2024 WL 948592, at *7 (E.D. Mich. Mar. 5, 2024) ("Often, an ALJ's summary of the evidence related to a nonsevere impairment suffices to explain why the ALJ did not find any corresponding functional limitations without any discussion "tying" that summary to the ALJ's finding.") (citations omitted).  It is Plaintiff's burden to show that the ALJ's decision is not supported by substantial evidence, but she did not meet that burden.  That there may be evidence supporting Plaintiff's position is not a basis to reverse the ALJ's decision.  The decision is supported by substantial evidence, so it is affirmed.

## VI.    CONCLUSION

Plaintiff has the burden of proof on her statements of error.  *Walters*, 127 F.3d at 529.  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, Plaintiff's *Motion for Summary Judgment* (ECF

No. 9) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 11) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.


Date: March 24, 2026                              s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge